IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SHELLI W. COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-00617-NKL |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Shelli Coleman's ("Coleman") Social Security Complaint [Doc. # 5]. Coleman seeks judicial review of the Social Security Commissioner's ("Commissioner") denial of her request for disability insurance benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401, *et seq.*, §§ 1381, *et seq.* The Administrative Law Judge ("ALJ") found that Coleman was not entitled to benefits and such determination became the final decision of the Commissioner when the Appeals Council of the Social Security Administration ("Appeals Council") denied Coleman's request for review. Coleman has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). For the following reasons the Court finds that the ALJ's decision is supported by substantial evidence.

I.      **Background**

### A. Factual and Procedural History[1]

Coleman, who has a GED, has most recently been employed in data entry. [Tr. 34]. Coleman filed an application for disability insurance benefits on August 23, 2007, claiming she became disabled on February 21, 2007 [Tr. 32] due to "Hip, back problems, migraines, ankle problems, depression, fibromyalgia, irritable bowel syndrome." [Tr. 227]. On November 12, 2009, following an evidentiary hearing, the ALJ issued a written decision finding that Coleman was not disabled prior to June 10, 2009, but was disabled beginning June 10, 2009. [Tr. 23]. After the Appeals Council denied Coleman's request for additional administrative review of the unfavorable portion of the ALJ's decision, Coleman sought review by the Court.

Coleman, age 44 as of the date of the hearing, is about 5' 5" tall and weighs about 327 pounds. [Tr. 33]. Coleman testified that she is prevented from working because she suffers from fibromyalgia, osteoarthritis, migraines, deterioration of both hips, central tremors, and edema in both legs. [Tr. 38]. She testified that on a scale of zero through ten where ten would require her to seek treatment at an emergency room, her pain ranges between a five and six on her best days, and an eight and a half or a nine on her worst days. Her "best days" occur about once or twice a week; "worst days" occur a couple of days a week. According to Coleman, her pain medications keep her pain around "seven." [Tr. 41].

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

Coleman testified that her alleged disability onset date of February 21, 2007, was the date she was terminated from her last data entry job at Lab One, although she believes her disability started before that date. She filed for unemployment after her termination, and received benefits for approximately five or six months. [Tr. 35, 37].

Coleman testified that she suffers from crying spells and anxiety attacks. For a few hours a few times a week, she experiences numbness in her hands and fingers. She has difficulty touching the floor, squatting, stooping, and climbing the stairs. According to Coleman, she could stand for ten minutes at a time, sit for one to two hours, and could lift a maximum of ten to fifteen pounds. Some of the side effects from the medications she is currently on include dry mouth, constipation, upset stomach, dizziness, and drowsiness.

Medical records indicate that Coleman was treated at Two Rivers Psychiatric Hospital in 1988 and Western Missouri Mental Health Center in 1989. Her treating physician, Damon Travis, D.O., assessed Coleman with migraines, back and hip pain, carpal tunnel, polymyalgia, polyarthralgia, and tremors. In October 2007, Ira Fishman, D.O., performed a consultation examination of Coleman, who found that Coleman may need an assistive walking device, and could not tolerate prolonged standing or frequent bending, stooping, or squatting. In November 2007, Keith Allen, Ph.D., concluded that Coleman's medical records did not show that she sought or received treatment for her mental impairments from Dr. Travis. Dr. Allen also observed that Dr. Fishman's examination did not indicate any mental health issues.

Coleman testified that she goes grocery shopping with her mother about once a week, sometimes does laundry and dishes, and fixes meals in the microwave. Her daily routine includes taking care of her cats in the morning, sometimes making breakfast, checking her e-mail, and watching a DVD. She stated that she has problems grooming herself and keeping her house clean. Coleman's mother indicated that on days that she is with her daughter, she observes that Coleman is in pain and has limitations walking, sitting, and standing, and has difficulty performing personal care. According to Coleman's mother, Coleman can care for her cats with assistance from a friend to lift litter boxes and long-term water dishes and feeders, drive, and do some laundry. Coleman's mother also noted that Coleman enjoys reading, watching TV, using the computer, and talking to her on the telephone.

### B. The ALJ's Decision

To establish her entitlement to benefits, Coleman must have shown that she was unable to engage in any substantial gainful activity by reason of a medically determinable impairment or combination of impairments which could be expected to end in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d) (2006). For the purposes of the Act, Coleman was not under a "disability" unless her impairment was so severe that she was unable to do her previous work or–any other kind of substantial gainful work which existed in the national economy. *Id.* The ALJ found that Coleman did not meet this burden at any time prior to June 10, 2009.

The ALJ found that Coleman had some severe impairments: degenerative joint disease/osteoarthritis, morbid obesity, migraine headaches, major depressive disorder, and generalized anxiety disorder. [Tr. 15-16]. *See* 20 C.F.R. 404.1520(c) and 416.920(c). The ALJ further found that prior to June 10, 2009, Coleman

> had the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could not climb ladders, ropes, or scaffolds; could not kneel, crouch, crawl, or stoop; could occasionally climb stairs and bend; could not work with dangerous unprotected machinery or at unprotected heights or vibrating tolls, could not work around loud noises as would be present in a factory; needed work with a maximum SVP of three which required only minimal interaction with co-workers and brief and superficial interaction with the general public; and routine low stress work that did not involve significant changes or adaptations.

[Tr. 17]. Although the ALJ found that Coleman could not perform past relevant work since her alleged disability onset date of February 21, 2007, she did find that prior to June 10, 2009, Coleman could perform jobs such as document preparer, clerical sorter, and inspector, which exist in "significant" numbers in the national economy. [Tr. 21].

Coleman raises only one argument on appeal. She asserts that the ALJ's decision is not supported by substantial evidence because the ALJ based her RFC finding prior to June 10, 2009, on a non-medical source.

## II. Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*,

5

480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

Coleman urges the Court to reverse the ALJ's decision because she contends that "there is no medical evidence about how [her] impairments affect her ability to function in the work place prior to June 10, 2009." [Doc. # 14, at 20]. Therefore, according to Coleman, the ALJ's RFC is not based on a medical opinion, but rather, is a result of the ALJ's efforts at "playing doctor."

Coleman mischaracterizes the medical record and the evidence relied upon by the ALJ in making her decision. "[T]o properly determine a claimant's residual functional capacity, an ALJ is . . . 'required to consider at least some supporting evidence from a medical professional.'" *Hutsell v. Massanari*, 259 F.3d 707 (8th Cir. 2001); *see also Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). The ALJ clearly did so here. In her decision, the ALJ explained that the following medical evidence supported her conclusion regarding Coleman's RFC: the opinion of Ira H. Fishman, D.O., who examined Coleman; and the opinion of State Agency psychologist, Keith L. Allen, Ph.D., who reviewed Coleman's psychiatric and mental health medical evidence of record. [Tr. 18-19]. That Dr. Allen and Dr. Fishman did not treat Coleman does not render their opinions to be "non-medical." Dr. Fishman opined that Coleman's physical limitations included an intolerance for prolonged

6

standing and frequent bending, stooping, or squatting.  She also had a potential future need for an assistive walking device.  [Tr. 298].  Dr. Allen wrote that Coleman had only mild limitations in her activities of daily living and maintaining social functioning.  Further, Dr. Allen stated that Coleman had no limitations in maintaining concentration, persistence, or pace, and suffered no episodes of decompensation.  Additionally, Dr. Allen noted that Coleman did not seek psychiatric treatment and did not use psychiatric medication.  Although Coleman reported that she received mental health treatment from Damon Travis, D.O., Dr. Allen observed that medical records from Dr. Travis did not indicate any complaints of mental health problems, any mental health diagnosis, nor any symptoms related to mental health issues.  Additionally, she did not make any psychiatric complaints of depression to her treating physician and Dr. Fishman's report did not mention any mental health issues.  [Tr. 307-309].

True, in further support of her RFC decision, the ALJ also relied on the following non-medical sources: the opinion of State Agency consultant, Rick L. Smith, who reviewed the medical evidence of record; the opinion of Coleman's mother; Coleman's work history, which indicated that she stopped working for reasons unrelated to her alleged disabling impairments because she was terminated from her job and thereafter received unemployment compensation for several months; and the ALJ's assessment of Coleman's subjective complaints and functional limitations.  However, contrary to Coleman's argument, the ALJ did not err in relying on these non-medical sources when determining Coleman's RFC.  *See Hutsell*, 259 F.3d at 711 ("[T]he ALJ bears the primary responsibility

for assessing a claimant's residual functional capacity based on all relevant evidence . . . ."); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

That the ALJ included additional limitations in Coleman's RFC, which are not present in other medical records but are indicated in Mr. Smith's report, is at most harmless error. The holding of *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007), is not inapposite. There, the court remanded the plaintiff's case for rehearing because the ALJ's error in weighing a lay person's opinion was not harmless as the record included a treating physician's opinion that was more restrictive. *Id.* Here, although it is Coleman's burden to prove her RFC, *Pearsall*, 274 F.3d at 1217, she points to no medical evidence indicating that treating medical providers offered more restrictive opinions than Mr. Smith. Additionally, Coleman does not argue that the ALJ's assessment of her credibility and subjective complaints was incorrect.

For the foregoing reasons, the Court finds that the ALJ's residual functional capacity determination was supported by substantial evidence from the record. Because the RFC finding presented to the vocational expert was not error, the vocational expert's testimony that Coleman could perform other work constitutes substantial evidence supporting the ALJ's decision that Coleman was not disabled prior to June 10, 2009.

## III. Conclusion

Accordingly, it is hereby ORDERED that Shelli Coleman's Petition [Doc. # 5] is DENIED.

 s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  June 13, 2011
Jefferson City, Missouri